Filed 11/30/20 (see concurring opinion)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RANSOM HUNTLEY GRIFFIN,<br><br>    Defendant and Appellant. | A159104<br><br>(Lake County<br>Super. Ct. Nos.<br>CR952884, CR953175-B,<br>CR953305-A) |


    Senate Bill No. 136 (2018-2019 Reg. Sess.) (Senate Bill 136)[1] eliminated the Penal Code section 667.5, subdivision (b)[2] enhancement for all prior prison terms except those based on sexually violent offenses. Defendant and appellant Ransom Huntley Griffin (Appellant) appeals from the trial court's October 2019 judgment pursuant to a plea agreement resolving three criminal cases. He contends the one-year enhancement for a prior felony conviction imposed under section 667.5, subdivision (b) as part of the plea agreement must be stricken due to Senate Bill 136. Respondent agrees the enactment is retroactive, and the enhancement must be stricken, but argues the prosecution must be given the opportunity to withdraw from the plea agreement.

---

[1] (See Stats. 2019, ch. 590, § 1, effective January 1, 2020.)

[2] All undesignated statutory references are to the Penal Code.

We agree with respondent on that issue, following the reasoning of the California Supreme Court in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*) and a recent Fifth District decision, *People v. Hernandez* (2020) 55 Cal.App.5th 942 (*Hernandez*).  However, we part with *Hernandez* in one respect and conclude it would be an abuse of discretion for the trial court to impose a longer sentence than the original agreement if a new plea agreement is entered on remand.

BACKGROUND[3]

In December 2018, the Lake County District Attorney filed a felony complaint in case number CR952884 charging Appellant with possession of methamphetamine for sale (Health & Saf. Code, § 11378), possession of materials with the intent to make an explosive (§ 18720), and possession of ammunition by a prohibited person (§ 30305, subd. (a)(1)).  The complaint further alleged that Appellant was prohibited from possessing a firearm pursuant to Welfare and Institutions Code sections 8100 and 8103.

In February 2019, the Lake County District Attorney filed a felony complaint in case number CR953175-B charging Appellant with entry with intent to commit larceny (§ 459), malicious destruction of personal property over $400 (§ 594, subd. (a)), being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and assault with a firearm (§ 245, subd. (a)(2)).  The complaint further alleged that Appellant personally used and discharged a firearm within the meaning of various Penal Code provisions, and that two prior prison term enhancements applied under section 667.5, subdivision (b).  The prior prison term enhancements were based on convictions for weapons offenses (§§ 21310 & 22210).

---

[3] The details of the underlying offenses are not relevant to the issues on appeal and are not summarized herein.

Also in February 2019, the Lake County District Attorney filed a felony complaint in case number CR953305-A charging Appellant with felony transportation of methamphetamine with intent to sell (Health & Saf. Code, § 11379, subd. (a)), felony possession of methamphetamine for sale (Health & Saf. Code, § 11378), felony withholding of a ring stolen by extortion (§ 496, subd. (a)), misdemeanor possession of psilocybin mushrooms (Health & Saf. Code, § 11377, subd. (a)), and misdemeanor possession of paraphernalia (Health & Saf. Code, § 11364). The complaint further alleged two prior prison term enhancements under section 667.5, subdivision (b).

In September 2019, Appellant entered into a plea agreement for all three cases. In case numbers CR952884 and CR953305-A, Appellant pled no contest to possession of a controlled substance for sale (Health & Saf. Code, § 11378). The stipulated term was eight months for each offense. In case number CR953175-B, Appellant pled no contest to burglary (§ 459) and admitted a prior prison term (§ 667.5, subd. (b)). The stipulated term was seven years: a six-year term for burglary and the one-year section 667.5 enhancement.

In October 2019, the trial court sentenced Appellant to a prison term of eight years, four months pursuant to the plea agreement.

This appeal followed.

### DISCUSSION

Under the version of the statute in effect when Appellant was sentenced, section 667.5, subdivision (b) required a one-year enhancement for each prior prison term served for "any felony," with an exception not applicable here. (Stats. 2018, ch. 423, § 65.) Senate Bill 136 substantially narrowed the enhancement, limiting its application only to a prior prison term served "for a sexually violent offense as defined in subdivision (b) of

3

Section 6600 of the Welfare and Institutions Code." (§ 667.5, subd. (b); see also *Hernandez*, *supra*, 55 Cal.App.5th at p. 947; *People v. Matthews* (2020) 47 Cal.App.5th 857, 862 (*Matthews*).)[4] Appellant contends and respondent agrees that Senate Bill 136 applies retroactively to non-final judgments. (*Matthews*, at pp. 864–865; *Hernandez*, at p. 947.)

Because neither of the prior prison term enhancements alleged below were based on a sexually violent offense, we agree the one-year enhancement imposed under section 667.5, subdivision (b) must be stricken. However, we reject Appellant's argument that the trial court may strike the enhancement and leave the remainder of the agreement intact. Instead, the plea agreement is now unenforceable. On remand, the parties may enter into a new plea agreement that does not include the enhancement, but the trial court may not impose a longer sentence than that imposed under the original agreement.

I.       *On Remand, the Trial Court Must Strike the Enhancement, but Thereafter it May Not Enforce the Remainder of the Agreement*

The first disputed issue on appeal is whether the 667.5, subdivision (b) enhancement must be stricken while the rest of the sentence remains intact. Appellant urges this court to follow *Matthews*, *supra*, 47 Cal.App.5th 857, decided before *Stamps,* which held that where there is an agreed-upon sentence for each offense that was part of a plea deal, those parts of the sentence may not be reconsidered when a trial court strikes a section 667.5, subdivision (b) enhancement. (*Matthews,* at pp. 867-869.) *Matthews*

---

[4] Section 667.5, subdivision (b) provides in relevant part, "[W]here the new offense is any felony for which a prison sentence . . . is imposed . . . , in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code . . . ."

4

reasoned that the benefits of Senate Bill 136 "would not be fully realized if the trial courts and the People could abandon a plea agreement whenever a defendant seeks retroactively to obtain elimination of an enhancement invalidated by" the enactment. (*Matthews*, at p. 869.) *Matthews* remanded with directions that the trial court strike all section 667.5, subdivision (b) enhancements "and leave the remainder of the sentences imposed under the plea agreements intact." (*Matthews*, at p. 869.)

*Matthews'* reasoning is no longer sustainable in light of the decision on a related issue in *Stamps*, *supra*, 9 Cal.5th 685, subsequently followed by the Fifth District in *People v. Barton* (2020) 52 Cal.App.5th 1145 (*Barton*) (regarding an enactment analogous to Senate Bill 136) and *Hernandez*, *supra*, 55 Cal.App.5th 942 (regarding Senate Bill 136 itself). In *Stamps*, the defendant's plea agreement specified a nine-year prison sentence that included a five-year prior serious felony conviction enhancement. (*Stamps*, at pp. 692–693.) While the defendant's "appeal was pending, a new law went into effect permitting the trial court to strike a serious felony enhancement in furtherance of justice [citation], which it was not previously authorized to do." (*Id.* at p. 692.) The change in the law resulted from Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393). (*Stamps*, at p. 700.) The Supreme Court held the matter should be remanded to give the defendant an opportunity to request that the trial court exercise its newly granted discretion to strike under section 1385. (*Stamps*, at p. 692.) But the court rejected the defendant's suggestion "that the [trial] court is authorized to exercise its discretion to strike the enhancement but otherwise maintain the plea bargain." (*Ibid.*)

*Stamps* reasoned, "Even when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention

5

of a plea bargain for a specified term.  Section 1192.5 allows a plea to 'specify the punishment' and 'the exercise by the court thereafter of other powers legally available to it,' and '[w]here the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and *the court may not proceed as to the plea other than as specified in the plea.*' " (*Stamps, supra,* 9 Cal.5th at p. 700.)  *Stamps* continued, "In order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, defendant must establish not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Id.* at p. 701.)

In *Stamps,* the defendant argued there was sufficient indication of legislative intent because, in enacting Senate Bill 1393, the Legislature sought " 'to reduce prison overcrowding, save money, and achieve a more just, individualized sentencing scheme.' " (*Stamps, supra,* 9 Cal.5th at p. 702.)  The Supreme Court concluded that was insufficient because "the legislative history does *not* demonstrate any intent to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement.  Indeed, none of the legislative history materials mention plea agreements *at all.* . . . Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision.  Its action did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Ibid.*)

6

*Stamps* distinguished *Harris v. Superior Court* (2016) 1 Cal.5th 984. In *Harris*, the defendant had pleaded guilty to felony grand theft with a prior in exchange for a stipulated prison sentence of six years. (*Harris*, at pp. 987–989.) As *Stamps* explained, "After passage of Proposition 47, which 'reduced certain nonviolent crimes . . . from felonies to misdemeanors' [citation], [the defendant] petitioned to have his theft conviction resentenced as a misdemeanor. [Citation.] The People argued the reduction violated the plea agreement and sought to withdraw from the bargain." (*Stamps*, *supra*, 9 Cal.5th at p. 702, quoting *Harris*, at p. 988.) Noting that the enactment "specifically applied to a person 'serving a sentence for a conviction, whether by trial or plea,' *Harris* concluded that '[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants.' " (*Stamps*, at p. 703, quoting *Harris*, at p. 991.) *Stamps* observed that, unlike the enactment in *Harris*, "Senate Bill 1393 is silent regarding pleas and provides no express mechanism for relief," which "undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Stamps*, at p. 704.)

*Stamps* concluded the appropriate remedy was to remand to provide the defendant an opportunity to ask the trial court to exercise its newly granted discretion; "[h]owever, if the court is inclined to exercise its discretion, . . . the court is not authorized to unilaterally modify the plea agreement by striking the serious felony enhancement but otherwise keeping the remainder of the bargain." (*Stamps*, *supra*, 9 Cal.5th at p. 707.) Instead, "[i]f the court indicates an inclination to exercise its discretion . . . , the prosecution may, of course, agree to modify the bargain to reflect the downward departure in the sentence such exercise would entail. Barring

7

such a modification agreement, 'the prosecutor is entitled to the same remedy as the defendant—withdrawal of assent to the plea agreement . . . .' " (*Ibid.*)

In *People v. Barton* (2020) 52 Cal.App.5th 1145 (*Barton*), the Fifth District followed *Stamps* in a statutory context similar to that involved in the present case. The issue in *Barton* was application of Senate Bill No. 180 (2017–2018 Reg. Sess.) (Senate Bill 180) to a non-final judgment. (*Barton*, at p. 1149.) Senate Bill 180 amended Health and Safety Code section 11370.2 "by eliminating its three-year enhancements for most drug-related prior convictions." (*Barton*, at p. 1149.) As in the present case, the parties agreed the enactment was retroactive, and, like Appellant, the defendant in *Barton* argued "the proper remedy is to vacate the enhancements and leave the remainder of her plea agreement intact." (*Ibid.*)

In light of *Stamps*, *Barton* reasoned that "the scope of the trial court's authority on remand depends on the legislative intent behind Senate Bill 180." (*Barton*, *supra*, 52 Cal.App.5th at p. 1157.) The court of appeal concluded the legislative history did not show "the Legislature intended for Senate Bill 180 to override the strictures of . . . section 1192.5." (*Id.* at p. 1150.) The history showed the Legislature intended to reduce overcrowding, re-allocate resources, and improve fairness in sentencing, but the history was silent regarding pleas, as was the case in *Stamps*. (*Id.* at p. 1159.) Thus, the trial court was required to "abide by" section 1192.5 on remand. (*Ibid.*)

Finally, in *Hernandez*, *supra*, 55 Cal.App.5th 942, the Fifth District followed *Stamps* as to Senate Bill 136, the enactment at issue in the present case. *Hernandez* considered "whether the Legislature intended for Senate Bill 136's amendments to section 667.5, subdivision (b) to allow the trial court to unilaterally modify the plea agreement once the prior prison term

8

enhancements are stricken." (*Hernandez*, at p. 957.) The court cited the Senate Bill 136's author's statement that the enhancement "re-punishes people for previous jail or prison time served instead of the actual crime when convicted of a non-violent felony. By ignoring the actual offense committed, this enhancement exacerbates existing racial and socio-economic disparities in our criminal justice system. Additionally, wide-spread research refutes the underlying premise that arbitrary enhancements increase public safety or deter future crime. . . . Given that this 1-year enhancement is commonly used, the Department of Finance projects that repealing this single enhancement will save California tax payers tens of millions dollars each year. It will also keep families together, redirect funds to evidence-based rehabilitation and reintegration programs, and move California away from our failed mass incarceration policies." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Senate Bill No. 136 (2019-2020 Reg. Sess.), as amended Sept. 3, 2019, pp. 2–3; see also *Hernandez*, at pp. 957-958.) *Hernandez* rightly observed that "[t]he legislative intent for the enactment of Senate Bill 136 is very similar to the intents discussed in *Stamps* and *Barton*." (*Hernandez*, at p. 958; see also *Stamps*, *supra*, 9 Cal.5th at p. 702; *Barton*, *supra*, 52 Cal.App.5th at pp. 1158–1159.) Further, "[i]n contrast to *Harris's* analysis of Proposition 47 and section 1170.18, Senate Bill 136 is silent regarding pleas and provides no express mechanism for relief, and thus refutes any suggestion the Legislation intended to create special rules for the court to unilaterally modify the plea agreement once the enhancements are stricken." (*Hernandez*, at p. 958; see also *Stamps*, at p. 704; *Barton*, at p. 1159.)[5]

---

[5] *Hernandez* recognized that *Matthews*, *supra*, 47 Cal.App.5th 857, reached a different result with respect to Senate Bill 136. (*Hernandez*, *supra*, 55

9

There is one significant difference between Senate Bill 1393, at issue in *Stamps*, and Senate Bill 136. Senate Bill 1393 gave trial courts discretion to strike an enhancement, while Senate Bill 136 *categorically* removed authorization to impose the section 667.5, subdivision (b) enhancement in the circumstances of the present case. Thus, while *Stamps'* remand instructions provided that the prosecution could withdraw from the plea agreement *only if* the trial court indicated its intent to exercise its discretion to strike the serious felony enhancement, the plea agreement in the present case is no longer enforceable. The same was true of the enactment addressed in *Barton*, leading the court to declare, "[T]he parties' plea agreement is unenforceable and the trial court cannot approve of the agreement in its current form. [Citation.] Whether by withdrawal of its prior approval or the granting of a withdrawal/rescission request by one or both of the parties, the trial court ' " 'must restore the parties to the status quo ante.' " ' [Citations.] The parties may then enter into a new plea agreement, which will be subject to the trial court's approval, or they may proceed to trial on the reinstated charges." (*Barton*, *supra*, 52 Cal.App.5th at p. 1159.) The same reasoning applies with respect to Senate Bill 136.

---

Cal.App.5th at p. 959) *Hernandez* concluded the *Matthews* remand instructions were no longer proper in light of *Stamps*, *supra*, 9 Cal.5th 685. We also note that the decisions in *People v. Martinez* (2020) 54 Cal.App.5th 59, review granted November 10, 2020, S264848, and *People v. Petri* (2020) 45 Cal.App.5th 82 remanded with instructions to strike section 667.5, subdivision (b) enhancements due to enactment of Senate Bill 136, but those courts did not consider the remand instruction issues addressed in *Stamps*, *Matthews*, *Barton*, and *Hernandez*.

10

II.     *The Trial Court May Not Impose a Longer Sentence Than the Original Plea Agreement*

The second disputed issue on appeal is whether on remand the trial court may impose a longer sentence than that provided in the original plea agreement, if the parties enter into a new agreement. We conclude it may not.[6]

At the outset, we observe such a result plainly would be inconsistent with the legislative intent underlying Senate Bill 136. The purpose of the enactment was to *decrease* the length of sentences imposed on repeat felons by substantially narrowing the scope of application of the prior prison term enhancement. An *increased* sentence due to retroactive application of the enactment would be directly contrary to the result the Legislature intended. The risk of an increased sentence would also discourage defendants from exercising their right to challenge unauthorized section 667.5 subdivision (b) enhancements. Indeed, that risk might also discourage some defendants from filing or maintaining an appeal on non-sentencing issues. For example, a defendant who lost a search and seizure motion and then entered into a plea bargain impacted by Senate Bill 136 or other sentencing reform measures might be hesitant to appeal the search issue, fearing the possibility that a reviewing court will reverse a judgment including an unauthorized enhancement even absent a request from a party to do so. (See *In re Harris* (1993) 5 Cal.4th 813, 842 ["An appellate court may 'correct a sentence that is

---

[6] We do not address a situation where the parties fail to enter into a new plea agreement after a post-Senate Bill 136 remand, and the defendant is convicted at trial. Whether the trial court could sentence that defendant to a term in excess of the originally agreed upon sentence, and what circumstances might affect that determination, are questions well beyond the scope of the present appeal.

not authorized by law whenever the error comes to the attention of the court.' "].)

The California Supreme Court's decision in *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*), supports a conclusion that the trial court may not on remand approve a new plea agreement imposing a longer sentence than that in the original plea agreement. In *Collins*, the defendant pleaded guilty to oral copulation in violation of former section 288a, in exchange for dismissal of numerous remaining charges. (*Collins*, at p. 211.) Prior to the sentencing hearing, the Legislature repealed former section 288a and decriminalized "the act of oral copulation between consenting, nonprisoner adults . . . ." (*Collins*, at p. 211.) The Supreme Court held that decriminalization of the offense applied retroactively and that the trial court improperly imposed a sentence on the offense. (*Id.* at p. 212.) However, the court rejected the defendant's suggestion that he could "gain relief from the sentence imposed but otherwise leave the plea bargain intact." (*Id.* at p. 215.) Instead, the court held the prosecution could "revive one or more of the dismissed counts" on remand. (*Id.* at p. 216.)

Nevertheless, and as relevant to the present appeal, *Collins* emphasized the defendant was "also entitled to the benefit of his bargain." (*Collins*, *supra*, 21 Cal.3d at p. 216.) The court explained, "This is not a case in which the defendant has repudiated the bargain by attacking his guilty plea; he attacks only the judgment, and does so on the basis of external events—the repeal and reenactment of section 288a—that have rendered the judgment insupportable." (*Collins*, at p. 216.) To preserve the benefit for the defendant, the court held the defendant's sentence on remand could not exceed the punishment the plea agreement had subjected him to. (*Id.* at pp. 216–217.) That disposition "permits the defendant to realize the benefits

12

he derived from the plea bargaining agreement, while the People also receive approximately that for which they bargained." (*Id.* at p. 217.) As support for its result, *Collins* invoked cases from the double jeopardy context. (*Id.* at p. 216.) The court explained the "concern there was specifically to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (*Ibid.*) Similarly, the defendant in *Collins* "should not be penalized for properly invoking [precedent] to overturn his erroneous conviction and sentence by being rendered vulnerable to punishment more severe than under his plea bargain." (*Id.* at p. 217; see also *People v. Hanson* (2000) 23 Cal.4th 355, 366 [following *Collins* and emphasizing "the chilling effect on the right to appeal generated by the risk of a more severe punishment"].)

The same reasoning applies here. Appellant, like the defendant in *Collins*, did not repudiate his plea; "he attacks only the judgment, and does so on the basis of external events . . . that have rendered the judgment insupportable." (*Collins*, *supra*, 21 Cal.3d at p. 216.) Rejection of Appellant's request to leave the remainder of the plea bargain intact ensures he will not receive a "bounty in excess of that to which he is entitled." (*Id.* at p. 215.) But it would be contrary to legislative intent and deprive Appellant of the benefit of his bargain were the trial court on remand to impose a longer sentence following Appellant's entry of a guilty plea pursuant to a new agreement. " 'The process of plea bargaining . . . contemplates an agreement negotiated by the People and the defendant and approved by the court.' " (*Stamps*, *supra*, 9 Cal.5th at p. 705.) " 'In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims

13

of crimes. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society . . . ." (*Id.* at p. 706.) We conclude that imposing a longer sentence would constitute an abuse of discretion.

Respondent urges this court to follow *Hernandez, supra,* 55 Cal.App.5th 947, which rejected the idea of extending the reasoning of *Collins* to a Senate Bill 136 remand. *Hernandez* stated, "we acknowledge the holding in *Collins* that allowed the prosecution to refile the previously dismissed charges as long as the defendant was not resentenced to a greater term than provided in the original plea agreement. *Stamps* did not extend *Collins* to permit such a resolution, and instead held the People could completely withdraw from the plea agreement if the prior serious felony enhancement was dismissed." (*Hernandez,* at p. 959.) We respectfully disagree. *Stamps* never addressed the language in *Collins* capping the sentence that could be imposed on remand, and *Stamps* never addressed whether the trial court could properly impose a longer sentence on remand. (*Stamps, supra,* 9 Cal.5th at pp. 703–704.) More fundamentally, as Appellant argues, the present case is more like *Collins* than *Stamps*: Any new plea agreement on remand in *Stamps* would have been the result of the defendant's decision to seek relief under Senate Bill 1393. (*Stamps, supra,* 9 Cal.5th at p. 708.) In contrast, in both *Collins* and the present case, the legislative enactments were "external events" that simply rendered the plea agreements unenforceable. (*Collins, supra,* 21 Cal.3d at p. 216.) Under the reasoning of *Collins,* that distinction supports different remand instructions here than in *Stamps.*[7]

---

[7] We note that *Stamps* questions no aspect of the *Collins* decision and, in 2016, the California Supreme Court observed, "Contrary to defendant's argument, we did not impliedly overrule *Collins* in *Doe v. Harris.*" (*Harris v. Superior Court, supra,* 1 Cal.5th at p. 993.) The concurring opinion urges our

Because "we must fashion a remedy that restores to the state the benefits for which it bargained without depriving defendant of the bargain to which he remains entitled" (*Collins*, *supra*, 21 Cal.3d at pp. 215–216), we reverse the judgment and direct the trial court to strike the section 667.5, subdivision (b) enhancement and to give the parties an opportunity to negotiate a new plea agreement consistent with our ruling.[8]

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion.

---

high court to reconsider *Collins*. We instead urge the Legislature to clarify its intent on how its differing sentencing reform measures should be applied.

[8] Because " ' "the court must restore the parties to the status quo ante" ' " (*Stamps*, *supra*, 9 Cal.5th at p. 707), respondent may be able to fashion a new plea agreement that imposes the same sentence as the now unenforceable agreement by "reviv[ing] one or more of the dismissed counts." (*Collins*, *supra*, 21 Cal.3d at p. 216.) Respondent may also seek to file an amended complaint or complaints pursuant to section 1009, which may aid the parties in reaching a new plea agreement that imposes the same sentence as the now unenforceable agreement. (See also *People v. Michaels* (2002) 28 Cal.4th 486, 513.)

_____

SIMONS, Acting P.J.

I concur.

_____

NEEDHAM, J.

(A159104)

16

Reardon, J., Concurring.

I agree fully with the conclusion in Part I of the majority opinion that, on remand, the trial court must strike the one-year enhancement and, thereafter, may not otherwise enforce the remainder of the original plea agreement, absent the consent of the parties.  Under the authority of our Supreme Court's decision in *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*), I concur with the opinion's further conclusion in Part II that, on remand, the trial court may not accept a new plea agreement with a sentence longer than that contemplated by the original plea agreement.

This area of the law admits of several different permutations.  Among them, as noted in the majority opinion, is whether the change in law which undermines the original plea agreement is one that, as here, renders the agreement unenforceable because a provision of law has been repealed or no longer applies to the matter, or is a change that renders the agreement newly subject to judicial discretion, as in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*).  In the former circumstance, the plea agreement is nullified by operation of law; in the latter, by judicial determination.  As explained in the majority opinion, per the reasoning in *Stamps* (*id.* at p. 707), the parties are no longer bound by the agreement in either instance.

The majority opinion goes on to conclude that the original plea agreement continues to operate as a cap on punishment, even if the parties otherwise agree.  I believe this result is compelled by language in *Collins, supra,* 21 Cal.3d at pages 216–217.  I also agree with my colleagues that an implied overruling of *Collins* did not occur in *Stamps*.  (See maj. opn. *ante*, at p. 14, fn. 7.)  The court in *Stamps* cited *Collins* approvingly on a related point (*Stamps, supra,* 9 Cal.5th at pp. 703–704), and had the opportunity to overrule *Collins* on this one and did not.  (Cf. *People v. Hernandez* (2020)

1

55 Cal.App.5th 942, 949.)  However, I believe the court's analysis in *Stamps* indicates a willingness to reconsider *Collins* on this point.  I write here to encourage that reconsideration.

The majority opinion confines its analysis to those situations wherein, upon remand, the parties enter into a new plea agreement.  (See maj. opn. *ante*, at pp. 10–11, fn. 6.)[1]  However, as I explain below, whether to impose a sentencing cap on remand to new plea agreements is implicated by whether a cap would apply in other situations, namely to sentencing following trial.  Consequently, I discuss that situation as well.

I see no reason to prevent the parties on remand from reaching a new agreement that contemplates a punishment in excess of the original agreement.[2]  Any new agreement would, of course, be subject to the trial court's approval.  " 'Judicial approval is an essential condition precedent to

---

[1] The majority opinion notes that the situation in which, after a post-Senate Bill No. 136 (2019–2020 Reg. Sess.) remand, the defendant is convicted at trial "is not before us."  But neither is the situation in which that same defendant is convicted, after remand, upon a plea.  In short, the defendant here is being granted a post-Senate Bill No. 136 remand; we do not know what will happen next.  I would decline to provide guidance for either eventuality.  That said, any guidance as to one implicates the other.

[2] I question on what basis a trial court's acceptance of a new plea agreement in excess of the cap would even be reviewable on appeal.  The *Stamps* court's discussion of Penal Code section 1237.5, subdivision (a)'s requirement of a certificate of probable cause on appeal from a plea is instructive on this point.  (*Stamps, supra,* 9 Cal.5th at pp. 694–698.)  A defendant may seek appellate relief without obtaining a certificate of probable cause when "the law subsequently changed to his potential benefit." (*Id*. at p. 698.)  But, having been granted that relief and having entered into a new plea agreement, there seems no reason to relax the requirement of the certificate.  It is not clear on what basis the trial court would grant a certificate in the face of a plea that the parties had agreed to and that the court had approved.  Undesignated statutory references are to the Penal Code.

2

the effectiveness of the "bargain" worked out by the defense and prosecution.' [Citations.] [¶] The statutory scheme contemplates that a court may initially indicate its approval of an agreement at the time of the plea but that 'it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter . . . .' [Citation.] 'The code expressly reserves to the court the power to disapprove the plea agreement' up until sentencing. [Citation.] 'In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society.' " (*Stamps, supra,* 9 Cal.5th at pp. 705–706.) I would expect the trial court to exercise its discretion appropriately in approving or rejecting the new agreement, but I would not limit that discretion or the ability of the parties to freely contract by imposing a cap. (*People v. Segura* (2008) 44 Cal.4th 921, 930 ["[A] 'negotiated plea agreement is a form of contract.' "].)

The parties to a plea bargain must consider all possibilities, from complete acquittal with no punishment to conviction on all charges and imposition of the maximum sentence. A plea bargain represents a meeting of the minds between those two poles based upon the parties' individual risk-benefit analysis. (See *Stamps, supra,* 9 Cal.5th at p. 705.) If subsequent alteration of the legal landscape, through the fault of neither party, invalidates the plea agreement and the parties are sent back to the bargaining table, the imposition of a cap based upon the originally agreed-

3

upon term substantially weakens the People's bargaining position and may, as a result, inure to the detriment of the defendant.

Take as an example a defendant charged, prior to the passage of Senate Bill No. 136, with one count of residential burglary (§ 460) and one prison prior (§ 667.5, subd. (b)).  The state prison term options upon a plea as charged would be the principal offense triad of two, four, or six years, plus one year for the enhancement.  The parties could structure an agreed-upon term of two, three, four, five, six or seven years.  Suppose the defendant proposes two years, the People propose four years, and they settle on three years:  low term for the burglary plus the one-year enhancement.  Following a post-Senate Bill No. 136 remand, in the absence of the one-year enhancement, the parties' statutory options would be limited to the burglary triad:  two, four, or six years.  The proposed cap would further limit them to one option—two years—the only term not to exceed the previous agreement.  Thus, in order to resolve the matter by plea, the People would have to accept the two-year term.  Of course, the goal posts have shifted to the extent the defendant's maximum exposure is now only six years, rather than seven.  But, the People, who originally rejected the idea that two years was an appropriate resolution of the case, now have that resolution thrust upon them.  They may well assess that two years is appropriate in light of the new exposure, but possibly not.  Instead, they could choose to go to trial.  I know of no authority whereby the appellate court or the trial court could force the People to enter into a plea agreement.  In that case, the cap could have the unintended consequence of forcing a trial.  But, the defendant may not want a trial, unless of course the sentencing cap were to apply also to any trial following remand—to which I now turn.

4

Take a second example in which a defendant pleads guilty to one of many counts, the plea is invalidated, and the matter remanded. Suppose further that no new agreement is reached and the matter goes to trial. If the defendant is convicted of more offenses at trial than incorporated in the plea bargain, any cap would act to hamstring the trial court's appropriate exercise of sentencing discretion. Certainly, a court approving a plea bargain weighs different interests and different information when approving that bargain than does a court at sentencing following trial.

In addition, a cap on any posttrial sentence would inordinately skew the plea bargaining process in favor of the defendant. Returning to my first example of the defendant facing one count of residential burglary. On remand, the cap, represented by the term of the original plea bargain, would be three years—a term not available in the sentencing triad for residential burglary. In light of the cap, the only term available for a plea agreement or after trial would be two years. Now, at the renewed plea bargaining session, the parties know that the defendant's maximum exposure is two years under any circumstance, rather than six. Indeed, such a defendant would have little to lose by rejecting a plea deal and taking the matter to trial. The effect of such a cap is likely to be magnified in my second example, which contemplates a post-remand trial on numerous charges. In essence, the new bargaining session would be substantially altered to the detriment of the People: the greatest downside for the defendant is the cap, not the maximum sentence carried by the charged offenses. This would seem to be an unfair result. As noted, the alteration in the legal landscape was not the defendant's fault, but it was also not the People's.

Here, for instance, defendant was charged in three different dockets with a variety of offenses. Should he choose not to enter into a new

5

agreement, the People would face the prospect of trying all three cases, yet being limited to a potential punishment no greater than that contemplated by the original plea agreement. Certainly, any concession by the People reflected by the original plea term, in the name of efficiency, the interests of victims, convenience of witnesses, guaranteed result, finality, etc., would be lost if the cases had to be tried. And, the greater potential punishment that the People forwent by entering into the plea bargain would also be lost by the imposition of a cap. For this reason, in addition to the inappropriate limitation on a sentencing court's discretion after trial, the imposition of a sentencing cap on any trial after remand is not advisable.

The majority opinion relies, in part, on the laudable principle that our ruling should not dissuade individuals from seeking appellate redress. (See maj. opn. *ante*, at p. 11.) But, at the time a defendant is deciding whether to appeal in these situations, he does not know if he will be able to reach a new plea agreement with the People, and neither he nor the court can force one. That is to say, he may have to go to trial, where no cap would apply. Thus, there seems to be no way to avoid the potential of dissuading him from appealing.

The court in *Stamps* held: "Defendant should be allowed to make an informed decision whether to seek relief on remand." (*Stamps, supra,* 9 Cal.5th at p. 708.) Of course, there, the original plea bargain was not unlawful on its face. Rather, on remand, a defendant would be inviting the trial court's exercise of discretion as to whether or not to strike the serious felony prior conviction. I see no meaningful distinction where, as here, the plea bargain is nullified by operation of law. A defendant need not seek redress if on balance he feels it is in his best interest not to do so. The defendant is simply put to the choice of whether or not, considering all the

6

potential outcomes, to make that request. We presume the defendant knowingly, intelligently and voluntarily entered into the original plea agreement. Why would we presume otherwise when considering a decision whether to seek appellate redress?

It is important to note that this balancing by the defendant of the risks and benefits of appellate review pertains only in cases of a plea bargain. When a defendant is convicted following trial or after entering an open plea to all the charges, no plea bargain is involved. On remand for resentencing, the sentencing court simply "reconsider[s] its sentence in light of its newly conferred authority." (*Stamps, supra,* 9 Cal.5th at p. 700.) The sentencing court is appropriately limited by its original sentence should the matter be remanded for resentencing following the alteration of the legal landscape. (*People v. Ali* (1967) 66 Cal.2d 277, 281.) In the former case, the People have had their opportunity to prove all the charges; in the latter, the defendant has admitted all the charges. The parties' bargaining positions have not been altered. Rather, the sentencing court having originally exercised its discretion to impose a certain sentence is simply limited by that sentence on remand. A defendant convicted under either of those scenarios would not be dissuaded from pursuing his appellate rights for fear of receiving a greater sentence.

As a general proposition, the court has no interest in preserving erroneous judgments. (*People v. Henderson* (1963) 60 Cal.2d 482, 497.) Yet, the Legislature did not go so far as to apply the remedy of Senate Bill No. 136 to final judgments, which it could have done. (See Sen. Bill No. 1437 (2017–2018 Reg. Sess.), granting retroactive relief when liability for murder under the theories of felony murder and natural and probable consequence was

altered.)  Is the interest, therefore, so great that we would require alteration of a nonfinal judgment that a defendant understandably did not request?

The majority opinion also explains that a cap on post-remand plea bargains would be consistent with the legislative intent underlying Senate Bill No. 136, namely to decrease prison sentences imposed on repeat felons. (See maj. opn. *ante*, at p. 11.)  However, the Supreme Court's discussion in *Stamps* explains the persuasive limits of that intent in light of the wording of the statute at issue there (similar to the one before us), particularly when compared to the more sweeping language of Proposition 47, analyzed in *Harris v. Superior Court* (2016) 1 Cal.5th 984 and referenced in the majority opinion.  (*Stamps, supra,* 9 Cal.5th at pp. 702–705 ["[T]his bill . . . says nothing about the proper remedy should we conclude a law retroactively applies."].)  The *Stamps* court concluded that the legislative intent to reduce sentences did not extend so far as to lock the People into a diminished plea bargain.

This brings us to what is, in my view, the persuasive reason for the holding in Part II of the majority opinion:  *Collins, supra,* 21 Cal.3d 208.  In that case, the defendant was charged with various felonies, including several forcible sexual assaults.  Pursuant to a plea bargain, he pled guilty to one count of nonforcible oral copulation, which at that time was unlawful even between consenting adults.  He was committed for treatment as a mentally disordered offender.  By the time he was later returned to court for further proceedings, consensual oral copulation had been legalized.  Overruling his objection, the court sentenced Collins to prison for an indeterminate term of one to fifteen years.  (*Id.* at pp. 211–212.)

The *Collins* court did four things.  First and unremarkably, it applied its earlier ruling in *People v. Rossi* (1976) 18 Cal.3d 295, holding that the

8

change in law legalizing the conduct for which Collins had been convicted applied retroactively, thus nullifying Collins's conviction. (*Collins, supra,* 21 Cal.3d at pp. 212–213.) Secondly, it determined that "the proper remedy is to reverse the judgment with directions to dismiss the count involved herein," rather than uphold the conviction and indicate " 'no penalty,' " as suggested by Collins. (*Id.* at p. 214.) Thirdly, it provided guidance to the trial court on remand by finding that the counts that were dismissed at the time of the plea could be reinstated. Because the defendant in *Rossi* had been convicted at trial of only nonforcible oral copulation, the question of other, dismissed counts had not been presented in that case. "Critical to plea bargaining is the concept of reciprocal benefits. When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made. . . . [¶] The question to be decided, then, is whether the prosecution has been deprived of the benefit of its bargain by the relief granted herein. We conclude that it has and hence the dismissed counts may be restored." (*Collins,* at pp. 214–215.) The court in *Stamps* relied upon *Collins* on this third point. (*Stamps, supra,* 9 Cal.5th at pp. 703–704.)

But, *Collins* went one step further by limiting the defendant's potential sentence on remand "to not more than three years in state prison, the term of punishment set by the Community Release Board pursuant to the determinate sentencing act." (*Collins, supra,* 21 Cal.3d at p. 216.)[3] In so

---

[3] After Collins's original plea and before the Supreme Court's ruling, the former indeterminate sentencing law was replaced with the determinate sentencing law. The prison terms of those sentenced under the former law were subject to recalculation by the Community Release Board, forerunner of our current Board of Parole Hearings. (See, generally, *In re Gray* (1978) 85 Cal.App.3d 255, 259–260; *Hoffman v. Superior Court* (1981) 122

doing, the *Collins* court seemed to suggest, without explanation, that the parties must enter into another plea agreement. The court did not expressly contemplate the possibility that the parties may be unable to reach a new agreement. Additionally, the court acknowledged: "We find precedent for the foregoing result in a line of cases based on principles of double jeopardy. Our concern there was specifically to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (*Id.* at p. 216.)

Any concern that the People would be acting vindictively, I believe, is adequately addressed through the trial court's traditional powers of supervision and approval of plea bargains. As I have explained above, the potential chilling of a defendant's appellate remedies is a weighty factor where the defendant has been sentenced following trial—the cases relied upon by the court in *Collins*. (*Collins, supra,* 21 Cal.3d at pp. 216–217.) I find it less weighty and, indeed, unavoidable in the quite complicated context of plea bargaining.

As mentioned, the *Stamps* court relied upon *Collins* as to the third point: the restoration of the dismissed counts. Curiously, the court did not rely upon *Collins* on the fourth and final point—the post-remand cap—or even take that issue up, in so many words. Instead, the court discussed at length and with approval *People v. Ellis* (2019) 43 Cal.App.5th 925, as to whether remand for resentencing would be futile in that case. As *Stamps* explained: "In light of these potential consequences to the plea agreement, we emphasize that it is ultimately defendant's choice whether he wishes to

Cal.App.3d 715, 724–725 [Board of Prison Terms, formerly Community Release Board]; *Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1059–1060, fn. 4 [Board of Parole Hearings, formerly Board of Prison Terms].)

10

seek relief under Senate Bill 1393. As *Ellis* reasoned: 'Given that defendants in criminal cases presumably obtained some benefit from the plea agreement, we anticipate that there will be defendants who determine that, notwithstanding their entitlement to seek relief based on the change in the law, their interests are better served by preserving the status quo. That determination, however, lies in each instance with the defendant.' [Citation.] While it is true that defendant has consistently argued on appeal that Senate Bill 1393 should retroactively apply to him, his argument has always been coupled with his claim that the proper remedy should be to simply allow the trial court to reduce his sentence by five years while otherwise maintaining the remainder of the plea agreement. Now that we have rejected his proposed remedy, defendant's calculus in seeking relief under Senate Bill 1393 may have changed. Defendant should be allowed to make an informed decision whether to seek relief on remand." (*Stamps, supra,* 9 Cal.5th at p. 708.)

Clearly, the court did not contemplate that any sentencing cap would pertain when it described the defendant's informed decisionmaking on remand. The court did not express concern that the absence of a cap would deter the exercise of appellate redress or be inconsistent with the legislative intent to reduce sentences, even though these ramifications would be as likely in the case of remand to allow the court to exercise its discretion as it would in a remand to correct an erroneous judgment.

The discussion in *Stamps* suggests a willingness by our Supreme Court to revisit *Collins*. I hope my thoughts may encourage that. Nonetheless, I agree that *Collins* remains our Supreme Court's clearest pronouncement on this point and that we are compelled to follow it. Thus, I join in the majority opinion's conclusion in Part II as well.

11

_____
Reardon, J.*

A159104

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Superior Court of Lake County, Nos. CR952884, CR953175-B, CR953305-A, Hon. Arthur H. Mann, Judge.

Nathan Siedman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin and Bruce M. Slavin, Deputy Attorneys General, for Plaintiff and Respondent.